**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

CEBON WAYNE PETTIE,

          Petitioner,

v.

DAVID ROGERS, Interim
Warden,[1]

          Respondent.

Case No. 23-CV-0328-SEH-SH

## OPINION AND ORDER

Petitioner Cebon Wayne Pettie ("Pettie"), an Oklahoma prisoner appearing through counsel, seeks federal habeas relief under 28 U.S.C. § 2254, asserting he is in state custody in violation of federal law pursuant to the criminal judgment entered against him in Tulsa County District Court Case No. CF-2008-2687.  Specifically, Pettie argues his plea was unknowing and involuntary and he received ineffective assistance of plea counsel.  [*See* ECF No. 2 at 11].  Having considered Pettie's Petition for Writ of Habeas Corpus ("Petition") [ECF No. 2], Respondent's Response to Petition [ECF No. 9], Pettie's Reply [ECF No. 11], the record of state-court proceedings provided

---

[1] Pettie presently is incarcerated at the Red Rock Correctional Center in Lawton, Oklahoma, and David Rogers is the Interim Warden of that facility. The Court therefore substitutes David Rogers, Interim Warden, in place of Steven Harpe as party Respondent.  *See* Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*.  The Clerk of Court shall note on the record this substitution.

by Respondent [ECF Nos. 9-1 through 9-17 and 10], and applicable law, the Court DENIES the Petition.

## *BACKGROUND*

On October 6, 2008, in the District Court of Tulsa County Case No. CF-2008-2687, Pettie pleaded no contest to the following six charges: two counts of manslaughter in the first degree, possession of marijuana, driving under suspension, transporting an open container and not having any insurance. [*See* ECF No. 10-1 at 3-4].  Pettie's convictions stem from an incident on May 16, 2008, wherein Pettie was driving while under the influence and struck the vehicle of Benjamin and Hughla Som de Cerff, causing their deaths.  [*See* ECF No. 10-5 at 40-41].

Pettie entered a blind plea.  [ECF No. 10-6 at 26; *see also* ECF No. 10-1 at 4-5].  After conducting an aggravation and mitigation hearing on December 1, 2008, Tulsa County District Judge Dana Kuehn ("Judge Kuehn") found Pettie guilty of all charges beyond a reasonable doubt and sentenced him to thirty-five years in the custody of the Department of Corrections for Counts 1 and 2 plus fines and costs, one year in the custody of the Tulsa County Jail for Counts 3 and 4 plus fines and costs, and a $10 fine plus costs for Counts 5 and 6.  [ECF No. 10-2 at 62-63; *see also* ECF No. 10-5 at 67-68 and ECF No.

2

10-6 at 2-9, 13-14].  Pettie's terms of incarceration were ordered to run concurrently.  [ECF No. 10-2 at 63].

On December 9, 2008, Pettie timely moved to withdraw his plea.  [ECF No. 10-6 at 15-20; *see also* ECF No. 10-6 at 22-23].  After conducting a hearing on the matter [*see* ECF Nos. 10-3 and 10-4], Judge Kuehn denied Pettie's motion.  [ECF No. 10-4 at 51-52].[2]  Convoluted appellate proceedings ensued [*see* ECF No. 9 at 3-9].  After being granted an appeal out of time, Pettie filed a Petition in Error claiming Judge Kuehn abused her discretion in denying Pettie's motion to withdraw his plea because his plea was not voluntarily entered and he received ineffective assistance of plea counsel. [ECF Nos. 9-16 and 9-17].  The Oklahoma Court of Criminal Appeals ("OCCA") denied Pettie's Petition for Writ of Certiorari and affirmed Judge Kuehn's decision.  [ECF No. 9-4].

The instant Petition for Writ of Habeas Corpus [ECF No. 2] followed. Pettie alleges he "received ineffective assistance of counsel who failed to advise him of the nature, purpose and consequences of his plea thus [Pettie's] plea was not knowingly, voluntarily or intelligently entered."  [*Id.* at 11.]

---

[2] Relevant facts related to Pettie's plea and efforts to withdraw his plea will be discussed in more detail below.

3

*DISCUSSION*

## I.    Legal Standards

A federal court has discretion to grant federal habeas relief to a prisoner who is in state custody pursuant to a final criminal judgment if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *see Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts.").  But the federal habeas statutes, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and as interpreted by the United States Supreme Court, significantly limit a federal court's discretion to grant habeas relief to a state prisoner.

"A state prisoner generally must exhaust available state-court remedies before a federal court can consider a habeas corpus petition."  *Bland v. Sirmons,* 459 F.3d 999, 1011 (10th Cir. 2006); *see* 28 U.S.C. § 2254(b)(1)(A).  When a state prisoner fairly presents a federal claim in state court and the state court adjudicates that claim on the merits, a federal court cannot grant habeas relief as to that claim unless the prisoner first shows that the state court's decision as to that claim either (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined

4

by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Douglas v. Workman*, 560 F.3d 1156, 1170 (10th Cir. 2009) (quoting 28 U.S.C. § 2254(d)(1)-(2)).

As used in § 2254(d)(1), the phrase "clearly established Federal law" means "the governing legal principle or principles" stated by "the holdings" of the Supreme Court's "decisions as of the time of the relevant state-court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). Thus, when § 2254(d)(1)'s framework informs a federal court's analysis, the first question for the court is whether the petitioner's claim rests on law that was clearly established by Supreme Court precedent at the time of the relevant state-court decision. *House v. Hatch*, 527 F.3d 1010, 1015-18 (10th Cir. 2008). If such law exists, and the state court has correctly identified that law, the only question under § 2254(d)(1) is "whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'" *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (quoting *Williams*, 529 U.S. at 413). To establish that the state court's decision unreasonably applied the law, a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in

5

existing law beyond any possibility for fairminded disagreement."
*Harrington v. Richter*, 562 U.S. 86, 103 (2011).  In other words, "a petitioner must persuade a federal court that no 'fairminded juris[t]' could reach the state court's conclusion under [the Supreme] Court's precedents."  *Brown v. Davenport*, 596 U.S. 118, 135 (2022) (quoting *Davis v. Ayala*, 576 U.S. 257, 269 (2015)).

Under § 2254(d)(2), a petitioner must show that the state court's decision rests on an unreasonable determination of the facts.  But "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Wood v. Allen*, 558 U.S. 290, 301 (2010).  Instead, the reasonableness of a state court's factual determination also is measured by *Richter*'s fairminded-disagreement standard.  *Dunn v. Madison*, 583 U.S. 10, 13-14 (2017).  And "if [*Richter's*] rule means anything, it is that a federal court must carefully consider all the reasons and evidence supporting the state court's decision" and that the federal court may not disturb the state court's decision "without identifying—let alone rebutting—all of the justifications" that may support that decision.  *Mays v. Hines*, 592 U.S. 385, 391-92 (2021) (per curiam).  In addition, when § 2254(d) applies, the federal court's review is limited to the same record that was presented in state court unless and until the petitioner

satisfies § 2254(d)'s demanding preconditions to relief, *Pinholster*, 563 U.S. at 185, and the federal court must presume the correctness of any state-court factual findings unless the petitioner presents clear and convincing evidence to rebut that presumption, 28 U.S.C. § 2254(e)(1).

If a petitioner satisfies § 2254(d)'s preconditions to relief, the federal court may then review the petitioner's federal claim *de novo*. *Milton v. Miller*, 744 F.3d 660, 670-71 (10th Cir. 2014). But, even on *de novo* review, a federal court must apply § 2254(e)(1)'s presumption of correctness to any state-court factual findings relevant to the federal claim. *Sumpter v. Kansas*, 61 F.4th 729, 750 (10th Cir. 2023). Moreover, even if the federal court determines that a constitutional error occurred, the court may not grant federal habeas relief unless the petitioner also "show[s] that the error had a "substantial and injurious effect or influence"" on the outcome of his trial." *Davenport*, 596 U.S. at 126 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Applying these legal standards, the Court turns to Pettie's claim.

## II.    Unknowing and Involuntary Plea

Pettie advances one claim containing two subparts. Pettie alleges he "received ineffective assistance of counsel who failed to advise him of the nature, purpose and consequences of his plea thus petitioner's plea was not

knowingly, voluntarily or intelligently entered." [ECF No. 2 at 11].

Therefore, the Court will address both portions of his claim: that his plea was involuntary and unknowing and that he received ineffective assistance of plea counsel. Concerning his plea, Pettie alleges:

> [e]vidence presented indicated that [Pettie] did not understand the plea form and the questions asked of him, as he was told he would receive a sentence less than what he was legally eligible for and as a result that plea resulted from coercion. [Pettie] pled no-contest to crimes that lacked sufficient evidence to convict him because there was no factual basis for the offense. The evidence failed to establish that [Pettie] ever read or went over the plea form and the plea form was incomplete. [Pettie's] Trial Counsel admitted he possessed no specific knowledge of going over the plea form with [Pettie] at the hearing on the Motion to withdraw the plea. Mr. Zanerhaft also admitted he was unaware of [Pettie's] learning disabilities. [Pettie's] fiancée, Sascha Elsner, testified that Mr. Zanerhaft went over the form with [Pettie] in the hallway outside of court just before entering the plea. Ms. Elsner explained that [Pettie] had a learning disability and struggled to read. [Pettie's] evidence that the plea form was incomplete is corroborated by clear and convincing evidence.

[ECF No. 2 at 13].

### A. The OCCA's Decision

In evaluating Pettie's claim, the OCCA explained:

> This Court's primary concern in evaluating the validity of a guilty plea is whether the plea was knowingly and voluntarily entered. *Dunn v. State,* 2018 OK CR 35, ¶ 9, 434 P.3d 1, 3. We review a district court's denial of a motion to withdraw plea for abuse of discretion. *Champion v. State,* 2002 OK CR 8, ¶ 3, 461 P.3d 952, 954. Under an abuse of discretion standard, we will not reverse the district court unless it made "a clearly erroneous conclusion

8

and judgment" that is against the logic and effect of the facts presented. *State v. Hodges,* 2020 OK CR 2, ¶ 3, 457 P.3d 1093, 1095. The burden is on Pettie to show a defect in the plea process that entitles him to withdraw the plea. *Elmore v. State,* 1981 OK CR 8, ¶ 8, 624 P.3d 78, 80. Furthermore, this Court has stated that, "[n]either Petitioner's dissatisfaction with the sentence, nor an inaccurate prediction by counsel of the likely sentence to be imposed on a blind plea, is a sufficient ground for withdrawal of a plea." *Champion,* 2020 OK CR 8, ¶ 3, 461 P.3d at 954.

The district court's ruling rejecting Pettie's claim that his plea was not knowing and voluntarily entered is supported by the record. We find the district court did not abuse its discretion in denying his motion to withdraw guilty plea.

[ECF No. 9-4 at 2-3]. Pettie argues this holding is "objectively unreasonable considering [he] has the right to the effective assistance of counsel in plea negotiations." [ECF No. 2 at 14].

### B. Analysis and Conclusion

To comport with due process, a plea must be knowing, voluntary and intelligent. *Brady v. United States*, 397 U.S. 742, 747-78 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *see also Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (noting that a plea is valid if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant" (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970))). At a minimum, for a plea to be knowing and intelligent, the defendant must understand the nature of the charges against him, the possible penalties, and the fact that he is waiving several constitutional rights by entering a plea. *Brady*, 397 U.S. at 756-57; *Boykin*, 395 U.S. at 242-44; *see also United States v. Hurlich*, 293

9

F.3d 1223, 1230 (10th Cir. 2002) ("The defendant need not understand every collateral consequence of the plea, but need only understand its direct consequences."); *Cunningham v. Diesslin*, 92 F.3d 1054, 1061 (10th Cir. 1996) ("An attorney's erroneous sentence estimate ... does not render a plea unknowingly made."). In determining whether a plea is knowing and voluntary, courts may consider answers a defendant has provided on written forms relevant to the plea. *Hoffman v. Young*, 23 F. App'x 885, 887 (10th Cir. 2001).[3] And a defendant's in-court statements made under oath during the plea hearing as to the knowing and voluntary nature of his pleas are also accorded a strong presumption of reliability. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (noting that "representations of the defendant ... at [a plea] hearing as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings").

A defendant's decision to enter a plea must also be voluntary; thus, a plea is constitutionally infirm if it is the product of coercion. *See Euziere v. United States*, 249 F.2d 293, 295 (10th Cir. 1957) ("A plea of guilty interposed as the result of coercion is not consistent with due process and therefore a judgment and sentence imposed pursuant to such a plea cannot stand.").

---

[3] The Court cites all unpublished decisions herein as persuasive authority. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

###### i.   Knowing and Intelligent

The Court has reviewed the transcripts of the relevant hearings, and the record supports the objective reasonableness of the OCCA's decision. At the plea hearing, Judge Kuehn asked Pettie, "[d]o you have any questions for me about anything on this form?" [ECF No. 10-1 at 3]. Pettie answered, "[n]o, ma'am." [*Id.*] Judge Kuehn then outlined the six (6) charges he was facing, including "not having any insurance," outlined the rights encompassed by a jury trial, and asked "do you wish for a jury to decide this matter or do you want to go forward with the plea which we will talk about? Which one?" [*Id.*] Pettie responded, "the plea." [*Id.*]. Judge Kuehn then explained:

> When we come back here, there are many options that can happen. Your attorney is going to be asking for a certain recommendation and the State is going to be asking me to sentence you to something. **There is no set plea negotiation number in this case**. You are getting a PSI that's going to tell me more about you, but the punishment range in your case for your charges is four to life. That means when we come back, **I can sentence you to life, I can sentence you to four, I can sentence you to anything in between.** Your attorney might ask me for probation. You might get a split sentence or you do some jail time, some probation time, or it might be that I give you all jail time, **and there is no guarantee on this number. Do you understand that's what a blind plea means, sir?**
> A: Yes, ma'am.
> Q: Do you have any questions for me about what that means?
> A: No, ma'am.
> Q: Have you gone over this with your lawyer?
> A: Yes, ma'am.

[*Id.* at 5 (emphasis added)].  The prosecutor even stated on the record the State would be asking for "30 years in the penitentiary." [*Id.* at 6].

Furthermore, Pettie's plea paperwork indicates the applicable punishment ranges for the six charged crimes [ECF No. 10-6 at 25], Pettie was entering a plea of no contest, there was no plea agreement, and he was entering a "blind plea[.]" [*Id.* at 26].  Portions of the plea paperwork were incomplete. [*See, e.g., id.* at 25 (answer to question 14 is incomplete), 27 (question 32 is unanswered)].  At the plea withdrawal hearing, Pettie's counsel, Jack Zanerhaft ("Zanerhaft"), testified the incomplete portions were an oversight. He prepared the plea paperwork prior to meeting with Pettie and went over it with him before the hearing.  [ECF No. 10-4 at 13, 25-26].  Zanerhaft also testified that Pettie's family was involved in the decision to plead no contest and never informed him Pettie had any learning disabilities.  [*Id.* at 9, 17-18; *see also* ECF No. 10-3 at 8 (Pettie testified his counsel did not know he was enrolled in learning disability classes), 32 (Pettie testified he is not limited mentally)].

At the plea withdrawal hearing, Pettie testified:

Q:  And that plea you knew to be what's called a blind plea; isn't that true?
A:  Yes.
Q:  And even Judge Kuehn explained to you what a blind plea meant, didn't she?
A:  Yes.

12

[ECF No. 10-3 at 15].

> Q:  And you knew what the ranges of punishment were that you could have faced because that's on this form; isn't that true?
> A:  Yes.
> Q:  And Mr. Zanerhaft went over that with you, didn't he?
> A:  Yes.
> Q:  As a matter of fact, you knew that the range, at least for manslaughter, was not less than four years nor more than life, correct?
> A:  Yes.
> Q:  It was your decision to enter what kind of plea to this charge?
> A:  No contest.
> Q:  All right.  Now, whose idea was it to enter a plea of no contest?
> A:  Jack's.
> Q:  Okay.  Did you agree with that?
> A:  Yes.
>
> ***
>
> Q:  You knew that you weren't entering a plea of guilty, correct?
> A:  Yes.

[*Id.* at 18-19].

> Q:  So you knew full well when you were entering this plea exactly what you were getting into, didn't you?
> A:  I guess.  Yeah.

[*Id.* at 28].  The record also reveals Pettie completed the twelfth grade

[ECF No. 10-6 at 24] and could read and write well enough to pass a

driver's license exam [ECF No. 10-4 at 36].

At other points during the plea withdrawal hearing, Pettie testified he did

not understand the "no contest plea" but he understood everything else.

[ECF No. 10-3 at 22; *see also id.* at 20, 31].  Pettie also testified Zanerhaft did

not inform him of the 85% Rule[4] and did not go over the entire form with him, but he did sign the plea paperwork. [*Id.* at 7, 8, 17, 21]. Pettie testified Zanerhaft told him, "manslaughter carr[ies] four to life, and that I wouldn't get no life or 30 years." [*Id.* at 6]. Pettie's fiancée testified Zanerhaft informed Pettie "he would only get four to eight [years]." [ECF No. 10-4 at 31]. Revealingly, Pettie testified the trial court should allow him to withdraw his plea "[b]ecause I don't think I deserve no 35 years for no car accident." [*Id.* at 31].

The record establishes Pettie understood the nature of the charges against him, the possible penalties and that he was waiving several constitutional rights by entering his plea. Judge Kuehn made it abundantly clear that Pettie could receive anywhere from four years to life incarceration, thereby undermining any erroneous sentence estimate provided by Zanerhaft. Pettie was provided multiple opportunities to ask Judge Kuehn questions on the record and did not. In all, the record supports the reasonableness of the OCCA's determination that Pettie's plea was knowing and intelligent.

---

[4] Under Oklahoma law, Pettie is required to serve at least eighty-five percent of his sentence without the possibility of parole, *see* Okla. Stat. tit. 21, § 13.1(3) (hereinafter "the 85% Rule").

### ii.    Voluntary

Regarding the voluntariness of Pettie's plea, Pettie's plea paperwork states he was not forced, abused, mistreated or promised anything by anyone to enter his plea and he entered his plea on his own free will without any coercion or compulsion of any kind.  [ECF No. 10-6 at 26].  Further, at the plea hearing, Pettie testified no one asked him to answer the questions on his plea paperwork in a certain way and no one was forcing him to enter a plea.  [ECF No. 10-1 at 2, 3].  As noted, he also testified he agreed with Zanerhaft's advice to enter a no contest plea.  [ECF No. 10-3 at 19].  Therefore, the record also supports the reasonableness of the OCCA's determination that Pettie's plea was voluntary.

On the record presented, the Court finds and concludes that the OCCA's rejection of Pettie's challenge to the constitutional validity of his plea was neither contrary to nor based on an unreasonable application of clearly established federal law nor an unreasonable determination of the facts.  The Court therefore denies the Petition as to this portion of Pettie's claim.

### III.    Ineffective Assistance of Plea Counsel

With respect to the ineffective assistance of counsel portion of his claim, Pettie alleges he "was denied the effective assistance of counsel in plea

15

negotiations and in considering whether he should enter a blind plea." [ECF No. 2 at 18].  Further, Pettie's counsel:

> [F]ailed to ensure he could read and understand the plea form, failed to advise him of the correct range of punishment, failed to advise that he would be required to serve 85% of the sentence imposed as part of the plea, and promised him a sentence far less than what he was eligible to receive and that he ultimately did receive from the Trial Court.

[*Id.*]

### A. The OCCA Decision

Pettie presented this claim to the OCCA.  The OCCA rejected Pettie's claim.  The OCCA reasoned:

> The burden is on Pettie to prove (1) that counsel's performance was deficient and (2) that counsel's deficient performance resulted in prejudice.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984); *Wiley v. State,* 2008 OK CR 30, ¶ 4, 199 P.3d 877, 878.  He must show there is a reasonable probability that, but for plea counsel's errors, he would not have pled guilty and would have insisted on going to trial.  *Lozoya v. State,* 1996 OK CR 55, ¶ 27, 932 P.2d 22, 31.  As with any claim of ineffective assistance of counsel, this Court need not determine whether counsel's performance was deficient if the claim of ineffective assistance of counsel can be disposed of on the ground of lack of prejudice.  *See Malone v. State,* 2013 OK CR 1, ¶ 16, 293 P.3d 198, 207.
>
> In support of his claim, he cites to the numerous alleged failings of plea counsel raised in Proposition 1.  Pettie's arguments involving the alleged failings of plea counsel are refuted by the record.  Pettie has not shown he was prejudiced by counsel's representation at the plea hearing or that counsel was ineffective.  His ineffective assistance of counsel claim is denied.

[ECF No. 9-4 at 3-4]. Pettie contends, "the OCCA's opinion was not merely erroneous but objectively unreasonable meeting [Pettie's] burden for issuing the writ[.]" [ECF No. 2 at 18].

## B. Analysis and Conclusion

The OCCA correctly identified the legal principles governing Pettie's ineffective assistance of counsel claim. In *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the Supreme Court held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Strickland* requires a defendant to show (1) that counsel's performance was unreasonable when measured against "prevailing professional norms" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 690-91, 694 (1984). The second part of the test determines whether counsel's alleged errors resulted in prejudice. *Id.* at 694. To demonstrate prejudice in the context of a guilty plea, a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Because the OCCA identified the correct standard governing his claim, Pettie cannot show that the OCCA's decision is "contrary to" clearly established federal law.

Nor can he show that the OCCA's decision is based on an objectively unreasonable application of the *Strickland/Hill* standard or an unreasonable determination of the facts.  When a state court applies *Strickland's* two-prong inquiry, the state court must view counsel's performance with the "strong presumption" that counsel's performance was reasonable "under prevailing professional norms." *Strickland*, 466 U.S. at 688-89.  Standing alone, this standard is "highly deferential." *Id.* at 689. Section 2254(d)(1) adds a second layer of deference.  When a federal habeas court reviews a state court's decision on a *Strickland* claim, the habeas court must grant the state court "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Richter*, 562 U.S. at 101.  The only question for the habeas court is whether the state court had a reasonable basis for rejecting the *Strickland* claim.  *Id.*  And "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* at 105.

Pettie raises several instances in support of this claim, and the Court will address each.  First, Pettie claims his counsel failed to ensure Pettie could read and understand the plea form.  [ECF No. 2 at 18].  While a portion of the plea paperwork is incomplete, Pettie testified he did inform his counsel that he graduated high school, but did not inform him that he had learning disabilities.  [ECF No. 10-3 at 43].  Further testimony at the plea withdrawal

18

hearing reveals there was strong communication between defense counsel and Pettie's family in reaching the plea decision. This supports the presumption that if there were concerns about Pettie's mental capacity, Zanerhaft would have been informed of them. [*See, e.g.,* ECF No. 10-4 at 9, 18 and ECF No. 10-3 at 14-15]. Pettie obtained a driver's license and testified he is not mentally impaired. [ECF No. 10-3 at 32; ECF No. 10-4 at 36]. Further, a review of the plea hearing transcript demonstrates Judge Kuehn outlined the charges and range of punishments and provided Pettie with the opportunity to ask questions. [ECF No. 10-1 at 3, 5]. Nothing in the record supports Pettie's position that he did not understand what he was agreeing to or that his counsel failed to ensure he understood the process. [*See* ECF No. 10-3 at 28]. Therefore, Pettie has failed to demonstrate Zanerhaft's performance was deficient in this regard.

Next, Pettie alleges his counsel failed to advise him of the correct range of punishment. [ECF No. 2 at 18]. Pettie does not cite the record for this proposition. [*Id.*] The plea paperwork includes the punishment range and Judge Kuehn advised Pettie of the same. [ECF No. 10-6 at 25 and ECF No. 10-1 at 5]. Accordingly, Pettie failed to establish he was prejudiced by his counsel's alleged failure to inform him of the correct range of punishment.

Pettie also alleges Zanerhaft failed to advise him that he would be required to serve eighty-five percent of the sentence imposed as part of the manslaughter convictions.  However, the plea paperwork indicates the 85% Rule applied to Pettie's convictions [ECF No. 10-6 at 25], and Pettie signed the plea paperwork indicating he understood the form and that his answers were true and correct [*Id.* at 27].  He also testified at the plea withdrawal hearing as follows:

> Q:  You indicated on that question there that the answers were true and correct when you were speaking with the Judge, didn't you?
> A: Yes.
> Q:  You also indicated that you understood that I, meaning you, may be prosecuted for perjury if I made false statements to the Court.
> A: Yes.

[ECF No. 19-3 at 22].  Further, Zanerhaft testified he "absolutely" explained the 85% Rule to Pettie.  [ECF No. 10-4 at 21].  Accordingly, Pettie has failed to establish either deficient performance by his counsel or prejudice.

Finally, Pettie alleges Zanerhaft "promised him a sentence far less than what he was eligible to receive and that he ultimately did receive from the Trial Court." [ECF No. 2 at 18].  Zanerhaft expressly denied any such promise.  [*See* ECF No. 10-4 at 19].  Pettie's plea paperwork also indicated he was not being promised anything by anyone to enter his plea.  [ECF No. 10-6 at 26].  Even if Zanerhaft had promised Pettie a lenient sentence prior to the

plea hearing, Judge Kuehn told Pettie at the plea hearing that he could receive any sentence between four years to life and "there is no guarantee on the number." [ECF No. 10-1 at 5].  Pettie answered affirmatively that he understood.  [*Id.*].  Therefore, Pettie cannot demonstrate any prejudice due to Zanerhaft's purported promise.

Viewing the OCCA's decision with the required deference, the record refutes Pettie's claims that his attorney provided ineffective assistance during entry of his guilty plea.  The OCCA's decision on Pettie's ineffective assistance of counsel claim was well within the range of reasonable applications.  Therefore, the Court denies Pettie's Petition as to this portion of his claim.

## *CONCLUSION*

The Court finds and concludes Pettie has not made the necessary showings to obtain federal habeas relief under 28 U.S.C. § 2254.  The Court therefore denies the Petition.  The Court further concludes that no certificate of appealability shall issue because reasonable jurists would not debate the correctness of this Court's assessment of Pettie's two-part constitutional claim.  28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IT IS THEREFORE ORDERED** that the Petition [ECF No. 2] is **denied**; a certificate of appealability is **denied**; and a separate judgment shall be entered in this matter.

**IT IS FURTHER ORDERED** that the Clerk of Court shall note on the record the substitution of David Rogers, Interim Warden, in place of Steven Harpe as party Respondent.

**IT IS SO ORDERED** this 10th day of April, 2026.

_Sara Hill_

Sara E. Hill
UNITED STATES DISTRICT JUDGE